PITTMAN, Judge.
Frederick Peace (“the former husband”) and Verla Peace (“the former wife”) were divorced in 2004. The pertinent provisions of the divorce judgment provided:
“6. The Wife shall be awarded one-half (1/2) of the value of the Husband’s pension fund, which is through Cytec Industries. It was represented to the Court that the Husband receives One Thousand Six Hundred Sixty Six Dollars ($1,666.00) per month from this pension, and, effective August 24, 2004, the Wife shall thereafter be awarded one-half (1/2) of this pension. The Court reserves jurisdiction to issue a Qualified Domestic Relations Order [ (‘QDRO’) ] in order to effectuate this transfer. Until said QDRO is placed into effect, however, the Husband shall have a duty to turn over to the Wife himself one-half (1/2) of the amount he receives in disposable income from said pension.
[[Image here]]
“8. Until the real estate and the mobile home are sold, the Husband shall pay to the Wife the sum of Four Hundred Dollars ($400.00) per month in periodic alimony, which shall terminate upon the Wife’s death, remarriage, or cohabitation with a member of the opposite sex. This figure shall then increase to the sum of One Thousand Two Hundred Dollars ($1,200.00) per month, once the said real estate and mobile home are sold.
[[Image here]]
“10. The Husband is ordered and directed to provide the Wife with health insurance, until such time as she can qualify for Medicare. The Husband shall be solely responsible for paying for said insurance.”
In April 2011, the former husband, acting pro se, filed a petition alleging that the former wife had remarried on March 12, 2011, and seeking to terminate (a) his periodic-alimony obligation; (b) his obligation to provide the former wife with health-insurance coverage; and (c) the qualified domestic-relations order (“QDRO”) directing that the former wife be paid $838 per month — half his monthly pension benefit of $1,666. The former wife answered and counterclaimed, seeking a finding that the former husband was in contempt of prior orders of the court.[1]
At a hearing on the merits of the former husband’s petition, the former wife acknowledged that she had remarried and that she was covered under her current husband’s health-insurance policy. She stated that for the past year she had not been paid $838, or half of $1,666 — the amount of the former husband’s monthly pension benefit as ordered in the divorce judgment — but that she had been paid only $147.13 as her share of the former *908 husband’s monthly pension benefit. The former husband argued that the divorce judgment had awarded the former wife half his pension, without specifying the total value of that pension; that, at the time of the divorce, he had been receiving a monthly pension benefit of $1,666; and that, when he had reached the age of 62, each party’s share of the monthly pension benefit had been reduced to $147.13. He stated that he had documents from his employer to substantiate the reduction in monthly pension benefits, but he did not seek to introduce those documents into evidence or to present any testimony concerning their contents.
At the conclusion of the hearing, the trial court announced its rulings from the bench:
“THE COURT: I am going to terminate the alimony requirement because that does by law terminate upon remarriage and that is undisputed. That will be terminated as of the month [the former wife] got married, which I believe was March.
[[Image here]]
“The insurance is slightly different. The insurance does not say that it is to terminate upon the [former wife’s] remarriage or cohabitation. It is not the same as the alimony, so I am not going to [terminate] that because it does have a timetable for when it expires .... [I]t [cannot] terminate automatically because it says so by its own terms, when it ends. So [the former husband] will have to reinstate the health care insurance.
[[Image here]]
“I cannot terminate the ... retirement. That is a property settlement .... That is not the same as alimony. [Property settlements] exist regardless of [the former wife’s] present marital status.”
The trial court informed the former husband that it would not amend the QDRO because the former husband had not pleaded the reduction in his monthly benefit as a reason for the requested change. The trial court memorialized its rulings in a judgment entered in favor of the former wife in the amount of $37,774 on July 28, 2011.
On August 23, 2011, the former husband, acting through counsel, filed a post-judgment motion, arguing that the former wife’s being covered by her current husband’s health-insurance policy constituted a material change in circumstances that has occurred since the entry of the divorce judgment that required the termination of his obligation to provide the former wife with health-insurance coverage. He also argued that the QDRO should be amended to reflect the fact that the former wife’s share of his monthly pension benefit was $147.13, rather than $833. At a hearing on the postjudgment motion, the former husband’s counsel argued:
“I know [the former husband] styled [his petition] to terminate [the QDRO requiring payment of half of $1,666 in monthly pension benefits to the former wife, but] what he wanted was for the court to modify [the QDRO] to be one-half of his retirement benefit. His retirement benefit, through no fault of his own, which was set up while they were married — when he turned 62, which was May 10th of 2010, the retirement — one-half of the retirement benefit was reduced to $147.13, which [the former wife] is ... receiving. And he was really asking for an order to reflect that, instead of one-half of the $1,600 which he ... no longer receives and is no longer his retirement benefit.... [T]he way the order is set up, [the former wife] is receiving even more than a hundred percent of his retirement benefits. *909 His retirement is basically $300 a month. I don’t know if that was made clear to the court through testimony. I read the transcript of the testimony and I wasn’t sure my client was making that clear.”
(Emphasis added.) The trial court responded:
“THE COURT: Again, he chose to represent himself.
“MR. ROBBINS [the former husband’s counsel]: I understand that. I understand that. Next—
“THE COURT: I can’t solve that one.”
Counsel for the former wife replied:
“[Counsel for the former husband] says ‘through no-fault of his own the retirement was reduced.’ That’s not true. There’s been evidence in prior hearings that the amount was reduced because [the former husband] raised his retirement account.
[[Image here]]
“The fact is [that the former husband] represented to the court [at the time of the divorce that] $1,666 would be the pension. After [the divorce], the former husband] went and changed that and now he doesn’t want to be bound by it.”
Following the denial of his postjudgment motion, the former husband filed a timely appeal to this court.
I.
The former husband argues that the trial court erred in refusing to terminate his obligation to provide the former wife with health-insurance coverage pursuant to ¶ 10 of the divorce judgment because, he says, that obligation constituted spousal support in the nature of periodic alimony that terminated upon the former wife’s remarriage. The former husband’s argument presents a legal issue, which we review de novo without affording any presumption of correctness to the trial court’s decision.
“ ‘A trial court’s conclusions on legal issues carry no presumption of correctness on appeal. Ex parte Cash, 624 So.2d 576, 577 (Ala.1993). This court reviews the application of law to facts de novo. Allstate [Ins. Co. v. Skelton ], 675 So.2d [377] at 379 [ (Ala.1996) ] (“[W]here the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the [trial] court’s judgment carries no presumption of correctness.”).’ ”
Boudreau v. Slaton, 9 So.3d 495, 498 (Ala.Civ.App.2008) (quoting City of Prattville v. Post, 831 So.2d 622, 628 (Ala.Civ.App.2002)).
Although this court has never explicitly held that the provision of health-insurance coverage constitutes spousal support in the nature of periodic alimony, we have previously recognized that the provision of health-insurance coverage may constitute periodic alimony. See Robinson v. Robinson, 795 So.2d 729, 731 (Ala.Civ.App.2001) (observing that the trial court “awarded the wife periodic alimony in the form of a requirement that the husband pay for her health insurance for 36 months”); Parker v. Parker, 639 So.2d 1376, 1380 (Ala.Civ.App.1994) (noting that “the wife was awarded $500 per month plus $215 per month for COBRA coverage as periodic alimony”); and Elliott v. Elliott, 579 So.2d 1383,1384 (Ala.Civ.App.1991) (affirming an award to the wife of “$125.00 per week alimony as long as the husband maintains a specific hospital and medical insurance benefit for the wife, but should that insurance cease, the alimony payments increase to $150.00 per week”). Notably, we have also recognized that the provision of health-insurance coverage is an obligation that is modifiable. See Brinkley v. Brinkley, 646 So.2d 49 (Ala.Civ.App.1994) (af *910 firming a trial court’s judgment that terminated a former husband’s obligation to pay the former wife’s health-insurance premiums).
We conclude that, in the present case, the award to the former wife of health-insurance coverage constituted spousal support in the nature of periodic alimony because the award was intended to compensate the former wife for a routine living expense and thereby to equalize the apparent disparity in the parties’ incomes, not to award her property. See Smith v. Smith, 959 So.2d 1146, 1151 (Ala.Civ.App.2006), in which this court stated:
“Given the disparity in the parties’ incomes, the wife’s health problems, her need for medical treatment, and her inability to obtain health insurance through her employer, we conclude that the trial court erred in failing to require the husband to pay the wife’s health-insurance premiums for at least the 36 months she was entitled to coverage under the husband’s health-insurance policy pursuant to COBRA. Cf. Wilkinson v. Wilkinson, 828 So.2d 924, 928 (Ala.Civ.App.2001) (holding that the trial court erred in failing to require a wife, at a minimum, to pay the husband’s health-insurance premiums for the 86 months he was entitled to coverage under the wife’s policy pursuant to COBRA).”
An award of spousal support in the nature of periodic alimony may be limited to a specific period, see Enzor v. Enzor, 98 So.3d 15 (Ala.Civ.App.2011), as it was in this case (“until such time as [the former wife] can qualify for Medicare”), or it may extend into the indefinite future, see Frye v. Frye, 115 So.3d 932, 937 (Ala.Civ.App.2012), but in either case such an award is in the nature of periodic alimony and, thus, is subject to the mandatory limitations of § 30-2-55, Ala.Code 1975, which provides, in pertinent part:
“Any decree of divorce providing for periodic payments of alimony shall he modified by the court to provide for the termination of such alimony upon petition of a party to the decree and proof that the spouse receiving such alimony has remarried or that such spouse is living openly or cohabiting with a member of the opposite sex.”
(Emphasis added.)
“‘By adoption of amendment 390 to the constitution and enactment of § 30-2-55, it has become the law and thus the public policy of this state that periodic alimony decreed by the court, which always has been modifiable upon a showing of changed circumstances, Sanders v. Sanders, 342 So.2d 380 (Ala.Civ.App.1977), is now to be terminated upon remarriage of the spouse receiving it. Such law and public policy is consistent with our jurisprudence. Divorce was not a common law right. It is purely statutory. The power to award alimony is also purely statutory. Ivey v. Ivey, 378 So.2d 1151 (Ala.Civ.App.1979). Alimony is derived only through the authority of statute and the exercise of the discretion of the trial judge. Therefore, what the legislature has granted it may take away. It has chosen to limit the discretion of the court by directing that an award of alimony in a prior decree be terminated by the court upon proof that the receiving spouse has remarried. It is well within the power of the legislature to do so.’ ”
Ex parte Murphy, 886 So.2d 90, 94 (Ala.2003) (quoting Oliver v. Oliver, 431 So.2d 1271, 1275-76 (Ala.Civ.App.1983), and holding that a former wife’s right to receive periodic alimony was terminated by her remarriage, notwithstanding the parties’ agreement that the former husband would continue to make a reduced periodic-alimony payment to the former wife following her remarriage).
*911 The trial court determined that the former husband’s obligation under ¶ 10 of the divorce judgment did not terminate upon the former wife’s remarriage because ¶ 10 has its own “timetable for when [the former husband’s obligation] expires” and “does not say that it is to terminate upon the [former wife’s] remarriage or cohabitation.” An award of periodic alimony need not expressly specify, however, that the obligation ceases upon the death or remarriage of the recipient spouse because “the term ‘periodic alimony,’ by definition, means a payment to a spouse that will cease upon death, remarriage, or cohabitation.” Wheeler v. Wheeler, 831 So.2d 629, 635 (Ala.Civ.App.2002). See also Lowe v. Lowe, 495 So.2d 1123, 1127 (Ala.Civ.App.1986) (stating that a wife’s “contention that § 30-2-55 is not self-effectuating and that she was thus entitled to receive ‘ alimony5 until the husband petitioned the court under the statute and proved the fact of her remarriage [was] of little merit” and opining that it was “implicit in the language of § 30-2-55 that periodic alimony would be terminable as of the date of the receiving spouse’s remarriage”).
Based on the foregoing authorities, we conclude that the trial court erred as a matter of law in failing to terminate the former husband’s obligation to provide the former wife with health-insurance coverage, effective as of the date of the former wife’s remarriage.
II.
Citing Rose v. Rose, 70 So.3d 429 (Ala.Civ.App.2011), the former husband contends that the former wife’s award of a share of his pension benefits constitutes periodic alimony, rather than a property settlement or alimony in gross, and that it was, therefore, terminable upon the former wife’s remarriage. That argument, however, was not presented to the trial court and cannot be raised for the first time on appeal. See White Sands Group, L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1057 (Ala. 2008).
In the alternative, the former husband contends that the trial court erred in refusing to modify the QDRO ordering the payment to the former wife of $833 per month from his pension fund. The former husband maintains that because the trial court never established the value of his pension fund and, instead, merely awarded the former wife a monthly distribution from that fund based upon the monthly distribution that the former husband had been receiving at the time of the divorce judgment, there is no impediment to modifying the QDRO to reflect a reduced monthly distribution.
We reject the former husband’s argument for two reasons. First, the former husband presented no evidence to substantiate his claim that the distributions from his pension fund had been reduced by his employer or the fund manager, rather than at his own direction, as the former wife’s attorney stated. Second, the former husband cites no authority in support of his argument that the provisions of ¶ 6 of the divorce judgment are modifiable.
“Rule 28(a)(10), Ala. R.App. P., requires that arguments in an appellant’s brief contain ‘citations to the cases, statutes, other authorities, and parts of the record relied on.’ Further, ‘it is well settled that a failure to comply with the requirements of Rule 28(a)(10) requiring citation of authority in support of the arguments presented provides this Court with a basis for disregarding those arguments.’ State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 822 (Ala.2005) (citing Ex parte Showers, 812 So.2d 277, 281 (Ala.2001)). This is so, because ‘ “it is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated gener *912 al propositions not supported by sufficient authority or argument.” ’ Butler v. Town of Argo, 871 So.2d 1, 20 (Ala.2003) (quoting Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994)).”
Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 9 (Ala.2007).
III.
The former husband insists that the trial court miscalculated the amount of the $87,774 judgment in favor of the former wife. He apparently contends that the trial court erroneously added $685.87 (the difference between $833 and $147.13) to his preexisting alimony and retirement-obligation arrearage for each month after May 10, 2010, when he reached the age of 62 and, he says, the monthly distributions to each party from his pension fund were reduced from $833 to $147.13. That argument is foreclosed by our disposition of the former husband’s argument in Part II, supra.

Conclusion

The trial court erred in failing to terminate the former husband’s obligation to provide the former wife with health-insurance coverage because that obligation was in the nature of spousal support and terminated upon the former wife’s remarriage. Accordingly, that portion of the judgment requiring the former husband to reinsti-tute health-insurance coverage for the former wife is reversed, and the cause is remanded for entry of a judgment in compliance with this opinion. The remaining portions of the judgment are affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.

. The record contains a judgment in favor of the former wife entered on February 2, 2009, in the amount of $21,747, representing an arrearage in monthly periodic-alimony payments of $1,200 and monthly retirement obligations of $833 (half of $1,666 from June 1, 2007, through January 31, 2009). The former husband was ordered to pay the judgment as follows: "$6,000 due and payable in 30 days from January 26, 2009, and the balance paid at the rate of $300 per month to be paid in addition to the $1,200 alimony and retirement obligations referenced above."